39881. MINGLEDORFF et al. v. BELL, Administratrix, et al.

RUSSELL, Judge. 1. Where on a motion for summary judgment it appears that the question is one of law and the pleadings disclose no genuine issue as to any material fact, the motion may be granted with or without supporting affidavits. *Dillard v. Brannan*, 217 Ga. 179 (3) (121 SE2d 768). The decisive question here being the interpretation of an insuring clause in an automobile service station liability policy, the petition of the insurer for declaratory judgment together with the attached policy and admissions contained in the answer forms a sufficient basis for deciding the case.

2. The disputed clause of this insurance policy commits the company "to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of: (a) bodily injury . . . caused by accident and arising out of the ownership, maintenance or use of the premises for the purpose of an automobile service station . . . and all operations necessary or incidental thereto; and the use in connection with such operations of any auto-

mobile not registered in the name of, nor owned in whole or in part . . . by . . . employees or agents of the insured or by a member of the household of any such person." The insured operated a business known as Bob's Truck Stop in connection with which there was a service station; this business constituted the insured premises. The defendant Peterson, an employee of the insured, drove an automobile belonging to his mother, a member of his household, to his place of employment with the intention of having it serviced; on the way back to his mother's home he suffered a collision with a vehicle in which another defendant in this declaratory judgment action was injured and who subsequently filed suit against him and the administratrix of the deceased insured. Plaintiffs in error contend that Peterson was not acting in the premises for himself or his mother, but as an employee of the service station in returning the car of a customer (his mother) to the owner after having had it serviced, an operation benefiting the service station; that coverage is afforded for the reason that the accident arose out of an operation necessary or incidental to the use of the premises as a service station, viz., the act of the insured through his employee in returning a bailed automobile to the owner. The insurer contends that "operations incidental to" the use of the premises include in connection therewith operations of automobiles only insofar as such vehicles are not owned by a member of the household of the employee. Plaintiffs in error cite, in support of the first contention, the cases of Challis v. Commercial Standard Ins. Co., 117 Ind. App. 180 (69 NE2d 178) and Maryland Cas. Co. v. Beckham, 163 Miss. 836 (143 S 886), neither of which cases is in point because they deal with the interpretation of the word "use." In Squires v. Textile Insurance Co., 250 N.C. 580 (108 SE2d 908) it was held that the provision of the policy making the employee an insured controlled over the ambiguous exclusionary clause. Employees are not included in the definition of an insured person in the policy here. In Lobe v. Bankers Indemnity Ins. Co., 343 Ill. App. 500 (99 NE2d 588) it was held that under a policy covering ownership, maintenance and use of the premises as a repair shop and "ownership, maintenance or use of any automobile for any purpose in connection with the above defined operations" but excluding "any automobile

owned by a member of the named insured's family," where the insured's wife left her automobile in the garage owned by the insured for repairs, and the insured, using it in the course of the garage business and also testing it to see what repairs were needed simultaneously, could not recover for the reason that there was no coverage. We think the plain meaning of the insuring agreement involved in the present case is that it does not cover vehicles owned by named insureds or a member of the household of any such insured. The accident did not occur on the premises or arise out of the use of the premises. Assuming but not deciding that the employee in returning home from work in his mother's car was in fact acting as an agent of the service station in returning a customer's car rather than in his own capacity as an employee or as the agent of his mother in having the automobile serviced and returned to her, it is nevertheless obvious that the accident did not arise out of the use of the premises as a service station. It did arise out of the operation of an automobile, which was perhaps engaged in an operation incidental to the use of the premises (that is, the return of a bailed vehicle) but if so the vehicle was not covered because belonging to a member of the household of the employee.

The trial court did not err in granting the motion for summary judgment in favor of the plaintiff insurance company which brought this action for declaratory judgment.

*Judgment affirmed. Nichols, P. J., Bell, Jordan and Hall, JJ., concur. Carlisle, P. J., Frankum and Eberhardt, JJ., concur specially. Felton, C. J., dissents.*

DECIDED APRIL 2, 1963—REHEARING DENIED APRIL 30, 1963.

*Bouhan, Lawrence, Williams, Levy & McAlpin, Kirk McAlpin, Walter C. Hartridge, II, Charles M. Jones,* for plaintiffs in error.

*Brannen, Clark & Hester, H. Sol Clark, Oliver, Davis & Maner, Edwin Maner, Jr.,* contra.

EBERHARDT, Judge, concurring specially. I agree with the majority that under the terms of the insurance policy here no coverage was afforded to the operation by Peterson of his mother's car. I think, however, that it should be observed that there

is nothing in the record upon which to conclude that there was any bailment contract between Mrs. Peterson, the owner, and Bell, who owned the truck stop and service station.

In her affidavit Mrs. Peterson asserts that the son, 17 years of age, lived in the home with her, and that: "On September 14, 1959, my son took my 1949 Ford automobile to have the car greased and the oil changed. He took the car to be serviced at Bob's Truck Terminal where he worked at that time. When my son took my car to be serviced a charge was always made for the service done on the car at Bob's Truck Terminal." In his affidavit the son testified: "I lived with my mother. . . I was employed by Bob's Truck Terminal . . . as service station attendant. I sometimes took my mother's vehicle out to the truck stop to have the oil changed and for a grease job. In other words, I would have the car serviced at the truck stop. On September 14, 1959, I drove my mother's car to have the oil changed, a grease job and a motor adjustment. I usually paid cash for the work done on the car. If for some reason I did not have the money . . . the operator . . . would make a ticket for the work and deduct it from my next pay check."

It further appeared from Mrs. Peterson's deposition that the son had customarily used another car, his, though registered in her name, in going to and from work at the Truck Terminal, but that on this occasion, and on the day before, his car was in a shop for repairs. On each of the two days young Peterson drove his mother's car to work as he went at the beginning of the day, and back after completing the day's work. The Truck Terminal was some seven or eight miles out from Savannah. There was no evidence that Bob's Truck Terminal had any custom of sending for a customer's car and returning it after performing a service on it, nor any that young Peterson, as the servant of Bell, was authorized to accept the mother's car and take it to the station for servicing or to return it after servicing. There was no evidence that there was included in the charge for greasing, etc., any charge for taking the car to the station and returning it. It does not appear that Mrs. Peterson ever, at any time, had any contact with Bell, or that he offered or agreed to

bring her car out for service and return it to her. There was no evidence that Bell knew that Mrs. Peterson was the owner of the car, or that he looked to her for payment for the service on it. On the contrary, it simply appears that young Peterson drove his mother's car out as he went to work, and while there may have had it serviced, and, if so, that he paid for the service or was obligated so to do. One does not ordinarily become a bailee without his knowledge and assent to the contract of bailment. "The general rule that the assent of both parties is necessary before a contract, either express or implied in fact, can come into existence is applicable to the ordinary case of a contract of bailment." 6 Am. Jur. 233, Bailments, § 79.

Perhaps there was a bailment of the car from Mrs. Peterson to her son, but I can find nothing in the record to justify any finding that Bell was a party to that arrangement. There may have been a bailment from the son to Bell during the time the car was at the station if it was serviced, but if so it terminated when young Peterson retook possession of his mother's car and started home.

If Bell received some economic benefit from the servicing of the car, that did not and can not, under the facts here, result in any bailment relationship between him and Mrs. Peterson. Cf. Maas v. Harvey, 200 La. 736 (8 S2d 683).

The facts and the situation before the court in Lobe v. Bankers Indemnity Ins. Co., 343 Ill. App. 500 (99 NE2d 588) are closely parallel with those here, while those in Maryland Cas. Co. of Baltimore v. Beckham, 163 Miss. 836 (143 S 886) are greatly different. I think that Lobe is the better reasoned case, and would follow it.

I am authorized to say that Carlisle, P. J., and Frankum, J., join in this concurrence.

FELTON, Chief Judge, dissenting. I dissent from the judgment in this case on the basis on which it is predicated. There would be no advantage in my expressing an opinion as to whether a bailment existed. I think the bailment question should also be decided now because if we do not, two petitions for certiorari could possibly be required.

The conclusion in this case should be reached in the light of

what is meant by the "use" of the alleged bailed vehicle. My opinion is that the word "use" does not refer to the operation of the bailed automobile, which operation is a part and parcel of the carrying out of the contract of bailment. In this case the vehicle was being returned to its owner, which would be a part of the bailment obligation, assuming there was one. What this policy means is that there would be no coverage if while the car was in the hands of the bailee he used it for business purposes in an operation totally disconnected from the contract of bailment, such as sending a customer to his home or place of business in the bailed vehicle. A case directly in point is Maryland Cas. Co. v. Beckham, 163 Miss. 836 (143 S 886).

I think the majority in this case have made the same mistake as was made by the court in Lobe v. Bankers Indemnity Ins. Co., 343 Ill. App. 500 (99 NE2d 588). In that case the court did not consider that part of the insurance policy which referred to the ownership, maintenance or use of the insured automobile for any purpose in connection with the business of the insured. The court based its conclusion on the provision of the policy, construed separately, to the effect that "this policy does not apply . . . to any automobile owned by a member of the named insured's family." This interpretation of the ruling in the case next above is borne out by the statement of the court as follows: "Whether the automobile here involved at the time of the accident was used by the insured, Andrew Lobe, for business purposes in connection with his garage, we think is immaterial." I think the decision in the Lobe case should have been based on the proposition that the bailed vehicle was used for business purposes not in connection with the bailment. The Beckham case, above referred to, construed the word "used" to mean to convert to one's own services, and construed it to exclude that which was a direct part of the service to another and cited, 8 Words and Phrases, First Series, page 7228, et seq.