James Robert **WELLS**, Plaintiff,

v.

**ALLSTATE INSURANCE COMPANY,** State Farm Mutual Automobile Insurance Company, and Annie M. Smith, Administratrix of the Estate of Ray E. Smith, Deceased, Defendants.

Civ. A. No. 70–41.

United States District Court,
D. South Carolina,
Greenwood Division.

June 1, 1971.

for Annie M. Smith, Administratrix, and Allstate Ins. Co.

J. William Bradford, Jr., and J. Kendall Few, of Burns, McDonald, Bradford, Erwin & Few, Greenwood, S. C., for State Farm Mutual.

## ORDER

HEMPHILL, District Judge.

This is a declaratory judgment action instituted by James Robert Wells against Allstate Insurance Company, State Farm Mutual Automobile Insurance Company and Annie M. Smith, Administratrix of the Estate of Ray E. Smith. The plaintiff alleges that on or about July 22, 1968, he was driving a 1964 Falcon in Greenwood, South Carolina and was involved in an automobile accident with a motorcycle being driven by Ray E. Smith; that at the time of the above mentioned accident he had in force and effect an automobile liability insurance policy with State Farm Mutual Insurance Company with limits of $10,000.00 for each person sustaining bodily injury and $20,000.00 for each accident. State Farm's policy of insurance covered a 1968 Torino owned by the plaintiff, however, said vehicle was under repair at the time of the accident in question. The plaintiff further alleges that the vehicle that he was driving at the time of the accident in question was furnished to him by Jefferson Motor Company and that said vehicle was covered under a garage liability insurance policy of Allstate Insurance Company issued to Jefferson Motor Company.

The defendant Allstate had in effect a garage insurance policy on Jefferson Motor Company with policy limits of $100,000.00 for personal injury to one person.

Allstate denies coverage upon the following grounds: (1) that the 1964 Falcon that the plaintiff was operating at the time of the accident in question was not owned by Jefferson Motor Company and was not being used in connection

William H. Nicholson, Jr., Greenwood, S. C., for plaintiff.

G. Dewey Oxner, Jr., and W. Francis Marion, of Haynsworth, Perry, Bryant, Marion & Johnstone, Greenville, S. C.,

with the business of Jefferson Motor Company and, therefore, is not covered by the garage liability policy issued by Allstate Insurance Company to Jefferson Motor Company; (2) that even if Hubert Martin loaned a 1964 Falcon to the plaintiff in connection with the business of Jefferson Motor Company, he did not have permission from the named insured to do so and was not operating within the scope of his authority and, therefore, the vehicle in question is not covered by the garage liability policy issued by Allstate Insurance Company; (3) that even if said vehicle was being used by Jefferson Motor Company in connection with the business of Jefferson Motor Company and the said Hubert Martin had permission to loan said vehicle to the plaintiff, the 1964 Falcon is excluded from coverage under exclusion 1(e) (2) (ii) which is found on page 1 of its policy and reads as follows:

"while rented to others by the named insured unless to a salesman for use principally in the business of the named insured, or";

(4) that the plaintiff only had permission to drive the above mentioned 1964 Falcon in Atlanta, Georgia and did not have permission to drive said vehicle to Greenwood, South Carolina and, therefore, said vehicle was not covered under the garage liability policy issued to Jefferson Motor Company by Allstate Insurance Company; (5) that in the event there is coverage to the plaintiff, its policy of insurance is secondary and the policy of State Farm Mutual Insurance Company is primary.

The defendant State Farm Insurance Company admits that it owes the plaintiff a defense and further admits that it provides coverage however, it alleges that its coverage is only secondary to that of Allstate Insurance Company.

The matter came to be heard by this court and in accordance with Rule 52, Federal Rules of Civil Procedure the court publishes its findings of fact and conclusions of law.

## FINDINGS OF FACT

1. That the plaintiff is a citizen and resident of Jackson County, Georgia, and that the defendants Allstate Insurance Company (hereinafter referred to as "Allstate") and State Farm Mutual Automobile Insurance Company (hereinafter referred to as "State Farm") are corporations organized and existing under the laws of the State of Illinois, and the defendant Annie M. Smith, Administratrix of the Estate of Ray E. Smith, deceased, is a resident of Greenwood County, South Carolina. There exists between plaintiff and defendants complete diversity of citizenship and the amount in controversy exceeds, exclusive of interest and costs, the sum of Ten Thousand and No/100 ($10,000.00) Dollars.

2. This is an action for a declaratory judgment under the Federal Declaratory Judgment Act, 28 U.S.C. Section 2201. A real and vital controversy exists between the parties to this action involving the construction of the insurance policies of the defendants State Farm and Allstate, as to which this court should exercise its discretion in the granting of declaratory relief.

3. The court finds that the plaintiff was driving a 1964 Ford Falcon automobile on July 22, 1968 when he was involved in an accident in Greenwood, South Carolina which resulted in the death of Ray E. Smith. The plaintiff was then the named insured under a policy of automobile liability insurance issued by State Farm. The Falcon came within the definition of a "temporary substitute automobile" under the State Farm policy and coverage was afforded to the plaintiff by State Farm under the provisions relating to a "temporary substitute automobile." The policy limits of the plaintiff's policy with State Farm were Ten Thousand and No/100 ($10,-000.00) Dollars.

4. A short time prior to the date of this accident, the plaintiff had left an automobile belonging to his mother-in-law, which he had been driving, with the

service and repair shop of Jefferson Motor Company, Jefferson, Georgia for the purpose of being repaired. At the time that the plaintiff left his automobile with Jefferson Motor Company, there was located on Jefferson Motor Company's used car lot the 1964 Falcon subsequently involved in the accident mentioned above. The title to this automobile was, at that time, in the name of G. Hubert Martin, one of the salesmen for Jefferson Motor Company, who had acquired the automobile from its previous owner for the purpose of selling it and at the time in question was holding it on the Jefferson lot for that purpose.

5. On the same day that the plaintiff had left the automobile which he was driving with Jefferson Motor Company for repairs, his mother-in-law Mrs. A. L. Venable, of Jefferson, Georgia, had called Mr. Martin at Jefferson Motor Company and asked him for assistance in obtaining an automobile for her daughter, the plaintiff's wife, to drive while the other automobile was being repaired at Jefferson Motor Company. As a result of this conversation, the plaintiff and his wife went to Jefferson Motor Company and met with Mr. Martin at which time he showed them the 1964 Falcon and agreed to let them use it while their vehicle was being repaired. Mr. Martin then had one of the employees of Jefferson Motor Company crank and check the Falcon inside the Jefferson Motor Company shop in preparation for turning it over to the plaintiff and his wife. A conversation took place between Mr. Martin and plaintiff's wife during which the plaintiff's wife agreed to pay four (4) cents per mile for the use of the automobile.

The testimony is conclusive that the figure agreed upon was neither calculated nor intended to return a profit to Mr. Martin on the transaction. Rather it was to cover wear and tear on the vehicle. Mr. Martin's purpose in the transaction was to provide an accommodation to the family of Mrs. A. L. Venable because they were good customers.

6. Mr. Martin was an old and trusted employee of Jefferson Motor Company, having been a salesman there for 44 years. He had the permission of Jefferson Motor Company to store and display used cars on its lot, which used cars Mr. Martin acquired on his own from time to time for the purpose of resale. Jefferson Motor Company had no financial interest in Mr. Martin's used cars and did not stand to profit or lose from his transactions regarding them.

7. The deceased husband of Mrs. A. L. Venable had been a long time customer of Jefferson Motor Company. His purchases at the establishment went back to the Model T. Four months prior to the time in question Mrs. Venable had purchased a new Ford automobile from Jefferson Motor Company and it appears that some of her children, not the plaintiff herein, may also have purchased automobiles there. The Venables were valuable customers not only of Jefferson Motors but also of Mr. Martin as they traded with him in his capacity as salesman and presumably he earned a commission on those sales.

8. Mr. Martin was allowed to make such use of his own automobile stored on the Jefferson Motor Company lot as he saw fit. The Jefferson Motor Company knew of his practice of occasionally turning over one of his automobiles to a customer as an accommodation. However, Mr. Martin had no authority to accommodate a customer with a Jefferson Motor Company car without first checking with his superior. Jefferson Motor Company had no notice of this particular transaction.

9. At the time plaintiff and his wife acquired the Falcon from Mr. Martin, it was Mr. Martin's understanding and their intention that the car would be used by plaintiff's wife in going to and from work in Atlanta. Mr. Martin did not expressly limit their use of the Falcon to that purpose. When a Corvair owned by plaintiff developed mechanical trouble, he used the Falcon to travel from Atlanta to his job site in Greenwood, S. C., leaving his malfunctioning

automobile for his wife's use in getting to work.

10. The record indicates that plaintiff and his wife had no notice that the car they acquired from Mr. Martin was not an automobile belonging to Jefferson Motor Company.

11. On the date Mr. Martin turned the 1964 Falcon over to the plaintiff and on July 22, 1968, the date of the accident in which Ray E. Smith was killed, that Allstate Insurance Company insured Jefferson Motor Company under a policy of insurance designated as a "garage insurance policy" with bodily injury coverage limits per person of One Hundred Thousand and no/100 ($100,-000.00) Dollars, which policy provided, in pertinent part, as follows:

> "Allstate will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
>
> A. bodily injury * * *
>
> * * * * * *
>
> to which this policy applies, caused by an occurrence and arising out of garage operations, including only the automobile hazard for which insurance is afforded as indicated in the declarations. * * *

> "IV. PERSONS INSURED
>
> * * * * * *
>
> Under the Garage Bodily Injury and Property Damage Liability Coverages:
>
> * * * * * *
>
> (3) with respect to the automobile hazard:
>
>> (a) any person while using, with the permission of the named insured, any automobile to which the insurance applies under the automobile hazard * * *.

> "DEFINITIONS
>
> * * * * * *
>
> "automobile hazard" means that one of the following hazards for which in-

surance is afforded as indicated in the declarations:

> *Automobile Hazard 1.*
>
> (1) the ownership, maintenance or use * * * of any automobile for the purpose of garage operations * * *.
>
> * * * * * *
>
> "*garage*" means an automobile sales agency, repair shop, service station, storage garage or public parking place;
>
> "garage operations" means the ownership, maintenance or use of the premises for the purposes of a garage and all operations necessary or incidental thereto;
>
> * * * * * *."

12. The above policy further provided under the heading of "Exclusions" as follows:

> "This insurance does not apply, under the garage liability coverages:
>
>> (e) to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of any
>>
>> * * * * * *
>>
>> (2) automobile
>>
>> * * * * * *
>>
>> (ii) while rented to others by the named insured unless to a salesman for use principally in the business of the named insured * * *."

That the policy of automobile liability insurance of defendant State Farm referred to above with policy limits of Ten Thousand and No/100 ($10,000.00) Dollars for each person sustaining bodily injury in any one accident and Twenty Thousand No/100 ($20,000.00) Dollars for each accident, in pertinent part, obligated State Farm as follows:

> "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of (A) bodily injury sustained by other persons * * * caused by accident arising out of the ownership, maintenance or use * *

of the owned automobile; and to defend \* \* \* any suit against the insured alleging such bodily injury \* \* \*.

"*Owned Automobile*—means the motor vehicle or trailer described in the declarations, and includes a temporary substitute automobile \* \* \*.

"*Temporary Substitute Automobile*—means an automobile not owned by the named insured or his spouse while temporarily used with the permission of the owner as a substitute for the described automobile when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction."

13. The 1964 Falcon, at the time of the accident, with respect to the State Farm policy, was an automobile not owned by the named insured or his spouse being used temporarily with the permission of the owner as the substitute for the described automobile, a 1968 Ford 2-door, while such automobile was withdrawn from normal use because of its breakdown, servicing and repair. Consequently, with respect to the State Farm policy, the 1964 Falcon was a "temporary substitute automobile".

The State Farm policy further provided on Pages 4 and 5 under "Conditions—Insuring Agreements I and II" "14. Other Insurance" as follows:

"All of the foregoing provisions and all coverages are subject to the following:

\* \* \* \* \* \*

(b) The insurance with respect to a temporary substitute automobile \* \* \* \* shall be excess over other collectible insurance."

14. The garage insurance policy of Allstate, on Page 4 under the heading of "Conditions" provided as follows:

"7. Other Insurance: The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the Company's liability under this policy shall not be reduced by the existence of such other insurance."

## DISCUSSION

The most difficult question with respect to coverage under the garage insurance policy is whether, at the time of the accident, the Falcon automobile was being used "in connection with garage operations" so as to make the Allstate policy applicable. "Garage Operations" is defined in the policy as "the ownership, maintenance or use of the premises for the purposes of a garage and all operations necessary or incidental thereto." The term "'garage' means an automobile sales agency, repair shop, service station, storage garage or public parking place."

The plaintiff and State Farm rely principally upon the case of Allstate Insurance Co. v. Urban, 15 Ill.App.2d 386, 146 N.E.2d 387 (1957). The facts in that case were close to those present here. In that case, the driver of the automobile, Stephen Urban, left his automobile with the Highland Bump Shop for repairs. The Highland Bump Shop was the named insured under a garage liability policy issued by Century Indemnity Company. The Highland Bump Shop loaned an automobile to Stephen Urban for his temporary use during the time these repairs were being accomplished. The automobile so loaned to Stephen Urban was not owned by the Highland Bump Shop but had been left with it by another of its customers for body repairs and painting. Coverage was afforded to Stephen Urban while so driving this automobile under the temporary substitute automobile provisions of his policy issued to him by Allstate. Allstate sought a determination that coverage was also afforded under the garage liability policy issued by Century Indemnity Company to the Highland Bump Shop on the theory that the Highland Bump Shop had "used" the automobile for the purpose of garage opera-

tions. The garage liability policy of Century Indemnity Company, the relevant provisions of which are set forth in the opinion of the Court, were identical in all essential respects to the garage insurance policy of Allstate discussed above.

The Court held that coverage was afforded to Stephen Urban under Century's policy, and that the Highland Bump Shop had "used" the automobile within the terms of the policy. The Court pointed out that the insurance afforded under the Century policy applied to "any automobile" regardless of the frequency or regularity of the use and regardless of the authority of the named insured to use the automobile or permit its use. The Court reasoned:

"Under that policy, the actual use of the 1949 Mercury automobile by Stephen Urban was, so far as the parties to this suit are concerned, unquestionably with the permission of the named insured, Highland Bump Shop, and hence if that 1949 Mercury was an automobile covered by the policy Stephen Urban was a person included within the meaning of "insured" thereunder, pursuant to III, Definition of Insured.

"One of the hazards against liability for which Century insured was the "use of any automobile in connection with the above defined operations", i.e., in connection with the "ownership, maintenance or use of the premises for the purpose of an automobile-repair shop—and all operations necessary or incidental thereto", pursuant to the Definition of Hazards. The "automobile" there referred to need not necessarily be one owned by the named insured, Highland Bump Shop. It may be, as here, a 1949 Mercury owned by someone else. It may be, literally, "any automobile". That is what the policy says.

"The 'use' there referred to need not necessarily be a frequent, regular, long continued, oft repeated use. The policy does not say so. It may be a use on one or more occasions, if it

can properly be said to be otherwise a use (permissive, if by someone other than the named insured) in connection with the above defined operations. And if the use be of an automobile not owned by the named insured, Highland Bump Shop, it is of no concern in this present case whether, as between the shop and the owner of the automobile, the shop had or had not any right or authority so to use or permit its use by Stephen Urban, if there is in fact a permissive use thereof in connection with the above defined operations."

\* \* \* \* \* \*

" \* \* \* It does not seem unreasonable to believe that an automobile repair shop's so temporarily loaning an automobile to its customer and so temporarily giving him the permissive use thereof under such circumstances may be in connection with the ownership, maintenance or use of the premises for the purpose of an automobile repair shop, or may be an operation incidental, if not necessary, thereto, and, if so, such use of such automobile is in connection with the above defined operations." \* \* \*

Allstate Insurance Co. v. Urban, 15 Ill. App.2d 386, 146 N.E.2d 387, 391–392.

Allstate relies heavily upon an opinion of the Illinois Court subsequent to *Urban* which discussed and limited that case. In the case of Bergmann v. Multi-State Inter-Insurance Exchange, 39 Ill. App.2d 468, 189 N.E.2d 49 (1963), the plaintiff operated a repair shop and a Dr. Zoltan brought his vehicle into the repair shop for repairs, however, he requested the plaintiff, one of the owners of the repair shop, to give him a car for emergency calls. Several days later, Dr. Zoltan was involved in an automobile accident while driving the above mentioned borrowed vehicle. The Illinois Court on page 52 distinguished that case from the *Urban* case, supra, as follows:

"Multi-State argues that the judgment entered below is contrary to law, fact and logic, relying strongly on All-

state Ins. Co. v. Urban, 15 Ill.App.2d 386, 146 N.E.2d 387. There, the owner of a Chevrolet brought his car to a garage for repairs and the garage loaned him, without permission, another customer's Mercury to use while the Chevrolet was being repaired. While driving the Mercury, the customer became involved in an accident. The owner of the Mercury did not carry insurance and a declaratory judgment action was instituted by Allstate (the Chevrolet's carrier) to determine whether it or the carrier of the garage liability policy was liable for coverage and defense. There the court found that the automobile had been loaned in accordance with the usual custom of the business, bringing the borrowed car and its operator under the garage liability policy. In the instant case there was a finding, uncontroverted by any evidence, that Dr. Zoltan was given use of the Chrysler as a personal favor by a friend and that the loaning did not arise out of the operation of a repair shop."

In the case of Webb v. Grimm, 116 Ohio App. 63, 186 N.E.2d 739 (1961), the Court of Appeals of Ohio also was asked to consider the case of Allstate Insurance Company v. Urban, supra, as controlling authority for a factual situation where a vehicle was being repaired and the garage, as an accommodation to the customer, delivered a vehicle belonging to a third party to the customer for his use while his vehicle was being repaired. The Court concluded that the Urban case was not applicable and on page 186 N.E.2d 755 stated as follows:

"The trial court's finding that "Beatty Motor Sales was, at best, delivering the Mad River Ford milk truck as an accommodation to Robison and Grimm, so that the milk of Robison's customers could be delivered to the dairy in Dayton" is supported by the evidence. But can it be concluded that in turning it over to Grimm, Beatty's extended coverage to Grimm under the terms of its garage liability policy? The facts in this case distinguish it from the case of Allstate Ins. Co. v. Urban, supra. In that case, the automobile had been put in the possession and control of the garage repair shop by its owner. The idea of substituting this car for the automobile being repaired originated in the mind of the management of the repair shop. In the case before us, Beatty's did not have custody and control of the Mad River truck when Grimm telephoned them and the idea of procuring this truck originated in the mind of Grimm and was conveyed by him to Beatty's. At the time Grimm telephoned Beatty's, Robison had permission of Mad River to use their Ford truck while his truck was undergoing repair and Grimm had implied permission of Robison to use it in furtherance of this bailment. The trial court found these facts and we have said that such findings are sustained by the evidence. The trial court held that Beatty's act in procuring the Mad River truck and turning it over to Grimm was done as an accommodation to Grimm and Robison. The trial court did not find that Beatty's acted in furtherance of its garage repair business."

Those cases are of course not binding upon this court and are persuasive only as their reasoning is convincing to the court. It should be noted that the court considers the motive in the present transaction to have been largely derived from business considerations unlike the *Bergmann* case. While Mr. Martin and the Venables were on friendly terms, it appears that their relationship was a business one rather than a social one. The testimony of both Mr. Martin and Mrs. Venable indicates that they were casual friends and that the purpose of the arrangement was to continue and improve the business relationship between the Venables and Mr. Martin as Jefferson's salesman. Under the facts of the *Webb* case it was important that the driver and a second customer of the insured garage had conceived the loan arrangement. In that case they, not the

garage, had made the arrangements for the loan of the vehicle from a third party. The garage's employees had merely delivered it. Where, as here, the loaned vehicle was on the premises of Jefferson and at the salesman's disposal, it does not appear that the fact that the bailment was made at the request of the Venables rather than on the suggestion of the salesman would be of consequence.

Allstate also relies upon the Georgia case of Mingledorff v. Bell, 107 Ga.App. 685, 113 S.E.2d 118 (1963). However, the insurer in that case prevailed, not because the automobile was not "used" for garage purposes, but because it was owned by a member of the household of the named insured. Therefore, the case is of no value in the present situation.

■ Under the facts of the present case this court is of the opinion that the Falcon was being "used" for garage purposes. Plaintiff's automobile was in the garage for repairs, he requested of a garage salesman a replacement vehicle. It was provided by the salesman to help out "a good customer of (the salesman) at Jefferson Motor Company." Thus the salesman's reason for entering the transaction was to enhance the possibility of future sales from which both he and Jefferson Motor would benefit. "Use" is an inclusive term and this court is of the opinion that the facts set forth above indicate that at the time of the accident, so far as the bailor was concerned, the Falcon was used for the purpose of garage operations. That the plaintiff was on personal business unrelated to Jefferson Motors cannot defeat coverage so long as his possession of the car and personal use of it were as far as Jefferson Motors was concerned, designed to promote customer relations and good business for that dealership.

Allstate argues that the salesman did not have authority from Jefferson Motors to loan Jefferson's automobiles. The record bears out that fact. However, there is no question but that Mr. Martin had permission to keep his cars on the Jefferson premises and to make such use of them as he saw fit. He occasionally lent the automobiles he kept there to customers of Jefferson Motors and Jefferson Motors had actual knowledge of that practice. The dealership acquiesced in that practice and shared in the good will inuring from it. On the Jefferson lot Mr. Martin's automobiles were not distinguished from those of Jefferson Motors and a potential bailee or customer had no reason to believe that Mr. Martin rather than Jefferson Motors owned a particular used car. Therefore, if the above set forth discussion of "use" is correct, the fact that the salesman had no authority to loan Jefferson Motors' automobiles can be of no consequence.

■ Allstate urges that the use of the Falcon by the plaintiff at the time of the accident was not within the permission granted by Mr. Martin. At the time the bailment was created, it was understood by Mr. Martin that the plaintiff's wife would use the car to drive to and from work in Atlanta. Subsequently, plaintiff had transmission trouble, left his car with his wife, and drove the Falcon to Greenwood, South Carolina, where he was employed on a construction job. Martin testified that he did not attempt to restrict the use of the car. The court is of the opinion that the unrestricted delivery of the automobile to the plaintiff or his wife for their personal use gave implied permission for the trip to Greenwood under the circumstances.

■ Allstate also urges that even if it is unsuccessful in its position regarding "use" and permission that the Falcon was rented at the time of the accident and therefore not within the coverage of the policy. There is considerable merit in its argument. There is no question but that plaintiff or his wife agreed to pay Mr. Martin four cents a mile for their use of the car. However, it is likewise clear that Mr. Martin did not regard the arrangement as a rental, the charge was not calculated to give him any return. Rather it was simply an approximation of the cost of the op-

eration of the car to him. His intent was to loan plaintiff the car but to charge enough so that he would not bear any expense. His motive was so revealed both by his testimony and by the fact that he made no charge for the time plaintiff was to keep the automobile, only for the miles it was driven. It needs no authority, of course, to state that exclusions in such a policy must be strictly construed. The term "rent" implies a commercial transaction for the mutual benefit of the owner and renter whereby the owner receives a valuable consideration for the renting of his automobile. If the sole motive for allowing the use of the automobile by another is the accommodation of the second person and the bailor neither expects nor wishes to realize any monetary gain from the arrangement there is no rental, within the ordinary meaning of that term.

On the question of whether the Allstate garage insurance policy would be primary or excess, several cases are cited in an excellent annotation entitled, "Apportionment of Liability Between Automobile Liability Insurers", 76 A.L. R.2d 502, 505, Section 2 and the later case service to such annotation. Seven cases are found involving garage insurance policies and non-ownership provisions of personal automobile liability policies. Six of these held that the garage insurance policy provided primary insurance: Neighbours v. Harleysville Mut. Casualty Co., 169 F.Supp. 368 (D. C.Md.1959); Mountain States Mut. Casualty Co. v. American Casualty Co., 135 Mont. 475, 342 P.2d 748 (1959); Federal Ins. Co. v. Prestemon, 278 Minn. 218, 153 N.W.2d 429; Henderson v. Selective Ins. Co., 242 F.Supp. 48 (D.C.Ky.); Safeco Ins. Co. v. Pacific Indem. Co., 66 Wash.2d 38, 401 P.2d 205; and Continental National American Group v. Burleson, 283 Ala. 671, 220 So.2d 611. The one case holding the car owner's policy to be primary, Allstate Insurance Co. v. Universal Underwriter's Insurance Co., 439 S.W.2d 385 (Tex.Civ.App.) involved a car owner's policy which had a pro rata provision and a garage policy which had a non-owner excess coverage provision. It is sufficient to note here that the garage insurance policy of Allstate specifically states that the policy is primary. The record contains no evidence from which it could be concluded that State Farm is estopped to urge that its coverage is secondary. While State Farm has offered its policy limit to settle the case, the court can find no reliance by Allstate to its detriment upon that offer.

## CONCLUSIONS OF LAW

On the basis of the foregoing Findings of Fact and the authorities set forth above, I make the following Conclusions of Law:

1. That this court has jurisdiction of the parties and of the subject matter of this action.

2. That on or about July 22, 1968 when the plaintiff was involved in a collision resulting in the death of Ray E. Smith in or near the City of Greenwood, South Carolina, the plaintiff was using, with the permission of the named insured, Jefferson Motor Company, under the terms of Allstate's garage insurance policy issued to Jefferson Motor Company, an automobile owned, maintained or used by the named insured for the purpose of "garage operations."

3. That coverage is afforded under Allstate's garage insurance policy to plaintiff covering plaintiff's liability to Annie M. Smith, as Administratrix of the Estate of Ray E. Smith, deceased, arising out of such accident.

4. That the garage insurance policy of Allstate affords primary coverage to the plaintiff for the plaintiff's liability arising out of such accident and that the policy of State Farm provides coverage in excess of the policy limits of Allstate.

And it is so ordered.