MOUNTAIN STATES MUTUAL CASUALTY COMPANY, A CORPORATION, RESPONDENT AND CROSS-APPELLANT, v. AMERI-CAN CASUALTY COMPANY, APPELLANT AND CROSS-RE-SPONDENT.

No. 9801.
Submitted April 15, 1959. Decided July 14, 1959.
As Amended July 16, 1959.
342 Pac. (2d) 748.

Coleman, Lamey & Crowley, Billings, for appellant. Cale J. Crowley, Billings, argued orally.

John C. Sheehy, Billings, argued orally, for respondent.

MR. JUSTICE CASTLES:

This is an appeal and cross-appeal from a judgment of the district court of Yellowstone County, in which judgment the appellant American Casualty Company obtained judgment against the appellee Mountain States Mutual Casualty Company for $4,444.44, plus interest and costs. The Mountain States Casualty Company will hereinafter be called Mountain States. Mountain States was plaintiff below. The American Casualty Company, defendant below, will be referred to as American.

The appeal poses a double question involving primary and secondary liability as between two automobile casualty insurers as parties named above. The questions are:

(1) As a matter of fact, was the offending vehicle being used on loan, gratis, or was it hired; and,

(2) As a conclusion of law, assuming the offending vehicle was not hired, must the limits of the primary policy be exhausted in full and not pro rata before recourse to the excess coverage of the secondary policy?

Only one accident occurred. Each insurer insists the other

is primarily liable. Both have appealed. The plaintiff company, referred to as Mountain States, refused to accept defense, refused to pay judgments resulting from actions on claims it refused to defend, sued the other company for declaratory judgment and partially lost.

The defendant company, referred to as American, accepted defense, reimbursed its named insurer for the judgments its named insurer paid, took written assignment and subrogation against the other company, cross complained as subrogee for reimbursement to the full amount of the judgments paid, which amounted to a total of $10,000, and partially won, securing judgment for the aforementioned $4,444.44.

The Mountain States' named insured was a truck sales and servicing corporation called McBee Diamond T, Inc., which we shall call merely McBee. This corporation owned the truck at fault in the accident. The corporation and the truck were insured by Mountain States under a general garage liability policy, with limits of $20,000 for each person injured, $40,000 for each accident and $5,000 property damage. The policy excluded hired automobiles but included those not hired. Automobiles included trucks. The "other insurance" clause in this policy applied *pro rata*.

McBee's Vice President and Manager, Eilert J. Olsen, gave permission for use of the offending truck. McBee was a close-held family corporation, the officers, directors and stockholders being Olsen, his father-in-law and his brother-in-law. The truck was not Olsen's personal property nor was it in his personal custody. Olsen's testimony at the hearing, that the truck was hired was completely impeached by his earlier signed statement that the truck was loaned, gratis. Olsen explained this discrepancy by saying he gave the signed statement at a time before he understood the importance, insurance-wise, of the difference between loaning and hiring.

The American's named insured was the Hilands Golf Club, located near Billings, hereafter called Hilands Club. Coverage of this policy extended to Hilands Club employee, Torval Peck,

who was driving the truck in connection with work on the club grounds, and also to the club.'s then grounds superintendent, Mavor S. Boyd, under whose supervision Peck was temporarily working as a carpenter. Hilands Club was insured under a general liability policy, with limits, as above of $25,000/$50,-000/$5,000. The "other insurance" clause in this policy was excess coverage, not pro rata coverage.

The aforementioned Boyd was the club official who dealt with McBee corporation through Olsen. Like Olsen, Boyd testified that the truck was hired and was not being used on a gratis loan; also, like Olsen, Boyd was completely impeached by a statement he had signed for an American Casualty Company claim adjuster the day after the collision. This statement recited that the truck was being used by the golf club on a gratis loan. Boyd likewise explained that at the time he signed this statement he too was ignorant of the importance of the difference, insurance-wise, between loaning and hiring. But according to the testimony of American's trial counsel, who took he stand to impeach Boyd, Boyd had volunteered to this counsel at a time early in the litigation that Boyd had changed his story from loaning to hiring because Olsen had asked him to change it.

The accident occurred April 24, 1950. The facts of the accident need not detain us. Boyd, Peck and Olsen were acting within the scope of their employment, the policies were in full force on the named insureds and Peck, as an employee of Hilands Club, driving McBee's truck, was at fault. The driver of the car struck by the truck and the driver's wife, his passenger, were injured, sued Hilands Club and each recovered a $5,000 consent judgment against the Hilands Club. The $10,000 total in judgments is well within the Mountain States policy limits.

American then reimbursed Hilands Club and took subrogation assignment of Hilands Club's cause against Mountain States for failure to defend Hilands Club and cross complained in the action for declaratory judgment. The district court found that the truck was on loan. This finding, if sustained

on appeal, makes Mountain States the primary insurer, up to its policy limits and, under the other insurance provisions of both policies, makes American's policy excess coverage applicable only after Mountain States' coverage is fully exhausted. Brief for Mountain States so concedes and counsel for Mountain States so admitted during argument.

To avoid liability Mountain States must establish that the truck was hired, not loaned. As plaintiff, Mountain States has this burden, also as appellant. It is no more than fair to say that counsel for Mountain States informed the court the signed statements, which impeach his witnesses Olsen and Boyd, took him completely by surprise.

The action for declaratory judgment was heard on June 18, 1956, a little more than six years after the accident. By then McBee had been sold and the purchasers also had gone out of business. Boyd, no longer grounds superintendent for Hilands, was brought back from Florida to testify, a fact which lends crédence to counsel's plea of surprise when Boyd was faced with the statement Boyd signed the day following the accident. Olsen's signed statement is dated September 5, 1950. It says "the truck in question was loaned to me * * * *gratuitously* and *without charge* for rental or otherwise, to the Hiland Golf Club through the person of its grounds superintendent Mr. Mavor S. Boyd * * * in consideration of personal favors previously performed by Mr. Boyd for me with equipment of the Hilands Golf Club but there was no other consideration given." Emphasis supplied.

The record shows that on August 11, 1950, Olsen personally collected a check for $126.50 from Hilands Golf Club on a personal bill he himself made up and submitted in person for "253 Lengths of Used 6″ tile at .50 cents each" and then changed to show as a billing for "58 Lengths of Used Tile at 50 cents ............................:............$29.00. Truck rent 78 hrs at $1.25...:......:........................................$97.50. [Total] $126.50." Both bills bore Boyd's "OK." Olsen endorsed the club's check to a local paint store in payment of what Olsen said was his own

personal $29 paint bill. He added that he gave the $97.50 to the McBee stockholders. As stated, these would be Olsen and Olsen's in-laws.

Additionally the record shows that under date of May 18, 1950, the McBee corporation had billed Hilands Club *in usual course* and had been paid $104.50 by the golf club for repairs to the truck, with nothing said whatsoever in the transaction as to any rental charge owing by Hilands Golf Club to McBee Diamond T, Inc. for use of the truck. This was before McBee was sold. There is much more in the record confirming the finding of the district court.

On this testimony the district judge found as a fact that the truck was loaned gratis and was not rented. His finding reads that the Hilands Golf Club was "using the  *  *  *  [truck] *  *  *  with permission of McBee Diamond T, Inc. and the truck was not  *  *  *  rented to the Hilands Golf Club by the named insured McBee Diamond T, Inc."

Basing his appellate argument on oral testimony given by ▮ Olsen and Boyd six years after the accident and avoiding, as he must, the statement Boyd signed the day following the accident and the statement Olsen signed within six months of the accident, both of which say the truck was loaned gratis, appellant argues that the evidence preponderates against the district court's finding that the truck was out on a gratis loan. The district court was justified in considering the written record made at the time more credible than the later oral testimony. In the face of this record and on the authority below cited we do not propose to overrule the judgment of the district court below. We find no error.

On appeal the supreme court will review the evidence in the ▮ light most favorable to the party prevailing below (Gray v. Corcoran, 127 Mont. 572, 269 Pac. (2d) 1091), but it will not be presumed that the court impliedly found facts inconsistent with its express findings. Ballenger v. Tillman, 133 Mont. 369, 324, Pac. (2d) 1045.

"The inherent improbability of his [a witness's] story may

deny it all claims to respect [citing Montana cases]. The credulity of courts is not to be deemed commensurate with the facility or vehemence with which a witness swears.'' Casey v. Northern Pacific Ry. Co., 1921, 60 Mont. 56, 68, 198 Pac. 141, 145.

Having found as a fact that the McBee truck was loaded and not hired, the court concluded as law that under the Mountain States Mutual Casualty Company's garage liability policy issued to McBee Diamond T, Inc., Mountain States was obligated to reimburse the American Casualty Company, Hilands Club's general liability insurer, which had reimbursed Hilands Club in full on the $10,000 judgment entered against Hilands Club in the suits for personal injuries. But the district court assessed damages against Mountain States at $4,-444.44, which is 4/9ths rather than the full amount of the $10,000 total judgments. American Casualty Company specifies error on this $4,444.44 sum, arguing that under the findings of fact Mountain States must reimburse American in full. In awarding the lower amount, the court prorated the loss between the companies instead of treating American's policy contract with Hilands Club as excess ''other insurance'' payable after Mountain States coverage on the truck under the McBee policy had been exhausted in full.

The McBee policy defines the named insured as including ''any person while using an automobile covered by this policy, and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured [McBee] or with his permission.'' Automobile includes trucks. Automobiles *rented* to others by the named insured (the court found no rental) are excluded. The ''other insurance'' clause of the policy pro rates with other valid and collectible insurance when Mountain States is not the primary insurer.

The Hilands Club policy is essentially the same except that the ''other insurance'' clause limits liability on non-owned and non-hired vehicles (the offending truck) to excess insurance,

i.e., the secondary insurance payable after the primary insurance is exhausted or is not collectible.

The rule of law, which controls under the circumstances we find here, is given with many citations in 8 Appleman on Insurance, section 4914, pages 333, 334. It disposes of the question of law on this appeal. We quote it here in full, with some of the citations, inserting in brackets the names and positions of the parties in the present appeal so that the general rule as given by Appleman can be applied to the specific facts of the present case.

"It has been held that where the owner of a * * * truck [McBee] has a [garage liability] policy [the Mountain States policy] with an omnibus clause [the Mountain States clause quoted above], and the additional insured [Hilands Club] also has a non-ownership policy which provides that it shall constitute excess coverage [as American Casualty Company's policy on Hilands Club provides] over and above any other valid, collectible insurance, *the owner's* [McBee's] *insurer* [Mountain States] *has the primary liability*. In such case, the liability of the excess insurer [American Casualty] does not arise until the limits [of $20,000 on any one person injured, and a total of $40,000 on all persons injured in any one accident] of the collectible insurance under the primary policy [Mountain States'] have been exceeded [the $10,000 here paid in settlement of judgments does not exceed]. It should be noted that under this rule, the courts give no application to the other insurance clause [Mountain States'] in the primary policy [Mountain States' policy] which provides that if the additional insured [Hilands Club] has other valid and collectible insurance [American Casualty's policy on Hilands Club, which the district court's judgment treats as pro-rating with Mountain States], he [Hilands Club] shall not be covered by the primary policy [Mountain States']. That is because the insurance under the [American's policy] excess coverage policy is not regarded as other collectible insurance, as it is not available to the insured [McBee] until the primary policy [Mountain States' policy on

McBee] has been exhausted [as American correctly argues here on appeal]. Or, to put it another way, *a non-ownership clause with an excess coverage provision, does not constitute other valid and collectible insurance, within the meaning of a primary policy with an omnibus clause."* Emphasis supplied.

Appleman cites, with many others, Grasberger v. Liebert & Obert, 1939, 335 Pa. 491, 6 A. (2d) 925, 122 A.L.R. 1201, reversing 134 Pa. Super. 78, 4 A. (2d) 186; Zurich General Accident & Liability Ins. Co. v. Clamor, D.C. Ill. 1941, 36 F. Supp. 954, affirmed 7 Cir., 1942, 124 F. (2d) 717; General Motors Acceptance Corp. v. Keran, 1942, 314 Ill. App. 320, 41 N.E. (2d) 211; American Surety Co. of New York v. American Indem. Co., 1950, 8 N.J. Super. 343, 72 A. (2d) 798, and Norris v. Pacific Indem. Co., 1952, 39 Cal. (2d) 420, 247 Pac. (2d) 1. See also Aetna Casualty & Surety Co. v. Buckeye Union Casualty Co., 1952, 157 Ohio St. 385, 105 N.E. (2d) 568, 31 A.L.R. (2d) 1317, with annotation on secondary insurer's right of subrogation, and Employers' Liability Assur. Corp. v. Fireman's Fund Ins. Group, 1958, 104 U.S. App. D.C. 350, 262 F. (2d) 239, included among the citations in appellant American Casualty Company's supplemental brief, along with American Surety Co. of New York v. Canal Ins. Co., 4 Cir., 1958, 258 F. (2d) 934, which quotes 8 Appleman, section 4914, as above, cites many supporting authorities, and at page 937 of 258 F. (2d) makes an observation, which we entirely approve, that "Losses should not fall irrevocably upon that insurer which first recognizes its obligations, while one neglectful of its duty is allowed to escape."

The foregoing authority supports the cross-appellant American Casualty Company's position that while judgment was properly given against Mountain States and for American Casualty, the judgment should have been rendered, not for $4,444.44, the prorated amount, but for reimbursement in full to American Casualty Company. We so hold.

The cause is remanded to the district court of Yellowstone

484

County for modification of its judgment consistent with the ruling here made. Let remittitur issue forthwith.

MR. CHIEF JUSTICE HARRISON, and MR. JUSTICES BOTTOMLY, ANGSTMAN, and ADAIR, concur.