Lubow and another, Plaintiffs, v. Morrissey and others, Defendants and Appellants: Shallock Transportation, Inc., and another, Defendants and Respondents. [Two appeals.]

*February 8—March 7, 1961.*

For the appellants Gerald R. Morrissey, Jr., and Liberty Mutual Insurance Company there were briefs by *Wickham, Borgelt, Skogstad & Powell*, attorneys, and *Norman C. Skogstad, Anton Motz,* and *Clayton R. Hahn* of counsel, all of Milwaukee, and oral argument by *Mr. Hahn.*

For the appellants Al Shallock, Inc., and National Union Indemnity Company there was a brief by *Arnold, Philipp & Murray* of Milwaukee, and oral argument by *James T. Murray.*

For the respondents Shallock Transportation, Inc., and American Employers' Insurance Company there was a brief by *Ray T. McCann* and *Richard A. McDermott,* both of Milwaukee, and oral argument by *Mr. McDermott.*

FAIRCHILD, J. 1. *Shallock Transportation, Inc.* There has been no argument on appeal that dismissal of Shallock Transportation, Inc., was erroneous. As to it, the judgment will be affirmed.

2. *Defense of American Employers.* Under this policy, Morrissey was an additional, or omnibus insured by reason of permission given him to use the automobile. The policy, however, limited the insurance of an additional insured as follows:

"The insurance with respect to any person or organization other than the named insured or such spouse does not apply: (1) To [1] any person or organization, or to any agent or employee thereof, operating an automobile-sales agency, repair shop, service station, storage garage, or public-parking place, with respect to [2] any accident arising out of the operation thereof, . . ." (Figures [1] and [2] inserted.)

It seems clear that the quoted language does not deprive Morrissey of insurance against liability arising out of this accident unless proposition [1] be true of Morrissey, *and* proposition [2] be true of this accident. All parties seem to concede that proposition [2] may be true of this accident, *i.e.,* Al Shallock, Inc., lent the automobile to Morrissey in furtherance of its repair-shop business and therefore, in a sense, the accident arose out of the operation of the repair shop, but American Employers seems to concede, as it must, that proposition [1] was not true of Morrissey, *i.e.,* he was not operating a repair shop, nor was he the agent or employee of Al Shallock, Inc.[1] American Employers asserts

[1] See *Tolsma v. Miller* (1943), 243 Wis. 19, 9 N. W. (2d) 111, where the policy provision was similar to the provision in the instant case.

that the use test [2] is controlling, and relies upon *Bendy-kowski v. Hall Chevrolet Co.*[2] In that case, an automobile-sales agency was instructing a prospective customer in the use of an automobile with automatic transmission. The accident occurred while the customer was driving. We held that a policy issued to her husband with respect to his automobile did not cover her liability because of a provision that the policy did not apply "to any accident arising out of the operation of an automobile-sales agency, repair shop, service station, storage garage, or public-parking place." This policy provision is materially different from the one before us. The circumstances of the accident were made clearly controlling. Had the named insured been driving, the exclusion would have applied to him as well. In the instant case, if Morrissey were denied coverage under circumstances where the named insured would have coverage, the clause would be invalid under sec. 204.30 (3), Stats.

We conclude that the circumstances under which Morrissey was using this car do not exclude him from insurance protection as an additional insured.

American Employers also calls our attention to the following propositions: Its policy, by its terms, applied only if the automobile "is owned, maintained, and used for the purposes stated as applicable thereto in the declarations." In the declarations, it appears that "Occupation of the named Insured is Contract Fleet Leasing" and "the purposes for which the automobile is to be used are 'pleasure and business.'" Morrissey was using the automobile for the purposes of his own business, which was neither that of Shallock Transportation, Inc., nor of a repair shop, or other type of automobile-garage business. We see nothing in the provisions just quoted which would exclude Morrissey from insurance as an additional insured under the circumstances of the accident. "Where the vehicle is insured for pleasure and business, it has frequently

---

[2] (1960), 10 Wis. (2d) 579, 581, 103 N. W. (2d) 516.

been the holding that this refers to the business or pleasure of any person using the automobile, whether the named insured be an individual, a corporation, or a political subdivision." [3]

The provision in the American Employers policy pertaining to the existence of other insurance against the particular liability concededly did not make its insurance excess insurance under the circumstances here involved. It did contain a provision: "If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; . . ."

3. *Defense of Al Shallock, Inc.* Al Shallock, Inc., joined its insurer in the motion for summary judgment, and joined in the appeal from denial of the motion. The motion, however, appears to have been based solely upon a provision in the insurer's policy. The allegations in the pleadings do not suggest on what theory there could be liability on the part of Al Shallock, Inc. A motion for summary judgment does not perform the function of a demurrer.[4] The parties have not argued here any question with respect to separate reversal as to Al Shallock, Inc. Under these circumstances, the denial of summary judgment as to it will be affirmed.

4. *Defense of National Union.* There is no claim that Morrissey's liability was excluded from the coverage of the National Union policy. National Union does claim that the insurance it afforded is excess insurance by reason of a clause in an indorsement, reading as follows:

"It is agreed that such insurance as is afforded by this policy to the Shallock Transportation, Inc., shall be excess insurance over any other valid and collectible insurance for

---

[3] 7 Appleman, Insurance Law and Practice, p. 108, sec. 4326.
[4] *Voysey v. Labisky* (1960), 10 Wis. (2d) 274, 103 N. W. (2d) 9.

bodily injury liability and property damage liability available to the insured."

It is evidently the theory that since the automobile involved was owned by Shallock Transportation, Inc., the insurance protection which Morrissey enjoyed as additional insured under the National Union policy was subject to the clause just quoted. On the other hand, it is true that both Al Shallock, Inc., and Shallock Transportation, Inc., were named insureds in the policy, and that Morrissey received his permission to use the automobile directly from Al Shallock, Inc., although pursuant to a general delegation of authority by Shallock Transportation, Inc. As has been previously noted, the policy was an automobile-garage liability policy. It bore an indorsement that the insurance afforded applies with respect to an automobile rented to a customer while the customer's automobile is temporarily left with the named insured for repair. Insurance under this policy was not predicated upon the ownership of the automobile by Shallock Transportation, Inc., but upon its use in connection with the garage operations.

We conclude that the excess-insurance clause quoted from the indorsement would apply only with respect to liability of Shallock Transportation, Inc. It would not apply to liability of an additional insured who became such additional insured by reason of the permission granted by the named insured, Al Shallock, Inc., in connection with its repair-shop operation. The general provision in the policy with respect to other insurance provides:

"If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss."

This provision, rather than the excess-insurance clause in the indorsement, applies.

National Union was not entitled to summary judgment.

5. *Defense of Liberty Mutual.* Liberty Mutual does not claim that Morrissey's liability was excluded from the coverage of its policy. It does claim that the insurance it afforded Morrissey was excess over the insurance afforded by American Employers and National Union. A provision of the Liberty Mutual policy states that the insurance afforded for a temporary substitute automobile "shall be excess insurance over any other valid and collectible insurance." The circuit court considered that this clause would be applicable, except that as he viewed the situation, it appeared that there was no coverage under the American Employers policy, and since both National Union and Liberty Mutual had applicable excess-insurance provisions, neither could be given effect under our decision in *Reetz v. Werch.*[5] As we see it, however, there are three coverages, two being governed by a provision for proration of the liability (American Employers and National Union), and one with a provision that the insurance afforded is excess insurance (Liberty Mutual).

In *Reetz v. Werch, supra,* the liability was covered by two policies. Each contained a provision that the insurance it provided was excess insurance over other valid and collectible insurance. Neither excess clause could be a defense for the particular insurer unless the other excess clause were disregarded. We concluded that there was no rational basis for giving effect to one, and disregarding the other, and that, therefore, effect should be given to neither. The conflict now before us is different. On the one hand are the proration clauses, "If the insured has other insurance . . . the company shall not be liable under this policy for a greater proration of such loss than the applicable limit of liability stated in the

---

[5] (1959), 8 Wis. (2d) 388, 98 N. W. (2d) 924.

declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss" and, on the other hand, the excess-insurance clause above quoted from the Liberty Mutual policy.

The collision between these clauses is not so completely frontal as it was between the excess clauses considered in *Reetz v. Werch, supra.* Yet, there is an area of conflict if a literal application is attempted. Literally, the proration clause would require that the Liberty Mutual coverage be considered in determining the portion of the liability which National Union and American Employers must pay, yet the excess clause would prevent payment of any portion by Liberty Mutual until full collection had been made from the other two.

The majority rule appears to be that this conflict is to be resolved by giving full effect to the excess clause, and applying the proration clause as if the insurance governed by the excess clause were not available to the insured. In *Citizens Mut. Auto Ins. Co. v. Liberty Mut. Ins. Co.*[6] the court of appeals for the Sixth circuit has said, after listing a number of cases: "The foregoing authorities represent the overwhelming majority view that when an excess clause in one automobile liability insurance policy conflicts with another 'other insurance' clause, and more particularly a 'prorata' clause, in a second policy, the excess clause controls and is to be given its full effect."

In the Liberty Mutual policy before us, the excess clause does not apply to the coverage for which the policy was primarily written, and does apply only to certain types of coverage of automobiles not owned by the named insured. In such situations it is to be anticipated that there will be coverage under another policy issued primarily to provide such coverage. Apparently insurers frequently, if not ordinarily, intend

[6] (6th Cir. 1959), 273 Fed. (2d) 189, 193.

to bear a greater responsibility where the coverage may be termed primary than that which they bear under other types of coverage, and the courts have considered that such usage itself provides a rational basis for giving an excess clause controlling effect in a conflict such as is presented here. The court of appeals of the Fourth circuit, has said in *American Surety Co. v. Canal Ins. Co.:* [7]

"The common, and highly desirable, practice of including extended coverage clauses in automobile liability insurance contracts, sometimes leads to duplications of coverages. To resolve the questions inherent in such duplications of coverages, most policies incorporate excess insurance or 'other' insurance clauses which usually follow the general rule that the policy insuring the liability of the owner of a described vehicle has the first and primary obligation. . . .

". . . Thus, it is generally held, as stated by Appleman, in referring to our exact situation, that 'a nonownership clause (coverage of liabilities arising out of the use of a hired or other vehicle) with an excess-coverage provision, does not constitute other valid and collectible insurance, within the meaning of a primary policy with an omnibus clause.' 8 Appleman, Insurance Law and Practice, p. 334, sec. 4914."

Having concluded that any liability of Liberty Mutual to plaintiff is contingent upon noncollectibility of the full amount under the National Union and American Employers policies, we reach the question whether Liberty Mutual is, therefore, entitled to summary judgment of dismissal. This is a question which was unnecessary to decide in *Reetz v. Werch, supra,* although in that case the circuit court had concluded that dismissal before trial of the insurer whose policy provided excess insurance would be premature.

The amount demanded in the complaint is $30,000. The total of the applicable limits of liability in the National Union and American Employers policies is $200,000. Plaintiff does not appear to have contested any of the motions for summary

---

[7] (4th Cir. 1958), 258 Fed. (2d) 934, 936.

judgment, and did not appear in this court on appeal. The possibility that Liberty Mutual will ever be required to pay any money under the circumstances of this case is very remote, yet does exist.

Sec. 260.11, Stats., provides that in an action of this type, an insurer of motor vehicles is a proper party defendant if one of several propositions be true. One is that the insurer have "an interest in the outcome of such controversy adverse to the plaintiff." Perhaps it could reasonably be said that the possibility of collection by the plaintiff from Liberty Mutual is too remote to give rise to an adverse interest, but that would be a dubious principle upon which to grant dismissal to defendant insurers because the degree of remoteness would be different in almost every case. Other grounds mentioned in the statute arise if the insurer "by its policy agrees to prosecute or defend the action brought by the plaintiff or any of the parties to such action, or agrees to engage counsel to prosecute or defend said action, or agrees to pay the costs of such litigation." The Liberty Mutual policy does contain obligations of that nature. It seems to us that in cases like the instant one, the insurer whose policy affords excess insurance is properly a defendant and remains so although any judgment ultimately rendered in favor of a plaintiff must reflect the fact that the insurers who afford insurance which is not excess are primarily liable up to the applicable policy limits.

6. *Liberty Mutual's cross complaints.* Liberty Mutual also moved for summary judgment on its cross complaints, seeking reimbursement for attorneys' fees and disbursements which it incurred in defense of Morrissey after refusal of the other insurers to defend. All three insurers had, and continue to have, an obligation to provide Morrissey with defense. It seems premature to make any adjustment among them of the expense of doing so in advance of final judgment.

*By the Court.*—In so far as the judgment dismissed the complaint and cross complaints against American Employers' Insurance Company and awarded costs, and in so far as the order entered June 22, 1960, directed such judgment, the judgment and the order are reversed. In all other respects the judgment and the order are affirmed. Appellants are to recover from American Employers costs in this court, except printing costs for part II of their briefs.