**GLOBE INDEMNITY COMPANY, a corporation, Plaintiff,**

v.

**CAPITAL INSURANCE AND SURETY CO., Inc., a corporation, Defendant.**

**Civ. No. 78-63.**

District Court of Guam
D. Agana, Guam Division.

March 27, 1964.

Sedgwick, Detert, Moran & Arnold, San Francisco, Cal., Olen W. Burnett, Agana, Guam, for plaintiff.

Barrett, Ferenz & Trapp, Agana, Guam, for defendant.

SHRIVER, District Judge.

The court has jurisdiction under Section 1424(a), Title 48, U.S.C.A. and Sections 62 and 82 of the Code of Civil Procedure of Guam. The parties have stipulated as to the facts, filed briefs, and subsequently waived oral argument as required in the pre-trial order. This opinion includes findings of fact and conclusions of law. For convenience the court has listed reference points as follows: 1. Stipulations; 2. Agreement between Globe and Capital; 3. Lease Agreement between Federal Automotive Services and Philco; 4. Insurance policy issued by Capital; 5. Insurance policy issued by Globe. In outline the facts are:

FACTS

1. On March 11, 1962, Lawrence L. Carolan (Carolan), an employee of Philco Corporation (Philco) was driving an automobile leased by Philco from Federal Automotive Services, Guam Division, d. b. a. Crown Motors (Federal). Philco was insured by Globe Indemnity Company (Globe) in the sum of one million

dollars. Federal was insured by Capital Insurance and Surety Co., Inc., (Capital) in the amount of $50,000 one injury, $100,000 one accident.

2. Carolan negligently drove the leased automobile into a car being driven by Julita E. Manibusan, resulting on the Manibusan side in one death and numerous injuries to the other occupants of the Manibusan car. The heirs of the deceased and the injured persons brought an action in this court, Civil Case No. 15–62, against Carolan, Philco, Capital and Federal. Capital was joined under the Guam direct action statute, Section 43354 Government Code of Guam, but Globe was not joined.

3. Globe settled all claims for $99,-500, including one settlement of $60,000 after entering into an agreement with Capital, No. 2, under the terms of which Globe was authorized to settle, Capital's share in the settlement to be determined by appropriate legal action or remedy. Globe brought this action to determine Capital's liability.

### THE CAPITAL POLICY

It is necessary first to consider Capital's contention that its liability is limited by the terms of the lease agreement between Federal and Philco, No. 3.

"5. Insurance Available to Lessee:

"a. Lessor agrees to provide, without charge, Fire, Theft, Public Liability and Property Damage insurance in the limits of $5,000 for one person, $10,000 for more than one person, but in no event more than $5,000 for any one person, for liability arising from any one accident and Property Damage insurance of $5,000 for any one accident, or limits provided by any statute or ordinance."

This provision accords with the Guam Financial Responsibility Law, Ch. 7, Sec. 23525 et seq., Government Code. The Capital policy, 4, was a fleet policy issued to Federal and covered the accident car and a number of others. It was clearly issued with the knowledge that it covered cars owned by Federal and held for lease. The insurance covered both Philco and Carolan. Article IV under "Insuring Agreements" provides:

"DEFINITION OF INSURED. The unqualified word 'insured' wherever used in Coverages C and D, and in other parts of this policy, when applicable to such coverages, includes the named insured and, except where specifically stated to the contrary, also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is with the permission of the named insured. The insurance with respect to any person or organization other than the named insured does not apply:

"(a) to injury to or death of any person who is a named insured;

"(b) with respect to the automobile while used with any trailer not covered by like insurance in the Company; or with respect to any trailer covered by this policy while used with any automobile not covered by like insurance in the Company;

"(c) to any person or organization, or to any agent or employee thereof, operating an automobile repair shop, public garage, sales agency, service station or public parking place, with respect to any accident arising out of the operation thereof;

"(d) to any employee with respect to injury to or death of another employee of the same employer injured in the course of such employment in an accident arising out of the maintenance or use of the automobile in the business of such employer."

Under "Conditions," Sec. 13, the policy provides:

"Other Insurance, If the insured has (Coverages A, B, C, and D) other insurance against a loss covered by this policy the Company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of a liability stated in the Declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance under Insuring Agreement VI shall be excess insurance over any other valid and collectible insurance available to the insured either as an insured under a policy applicable with respect to the automobile or otherwise, against a loss covered under either or both of said insuring agreements."

## THE GLOBE POLICY

The Globe policy, No. 5, covered automobiles leased by Philco. By an endorsement dated July 1, 1961, it was stated "that owned automobiles shall include automobiles leased by the insured." Article III of the policy, under "Definition of Insured" provides:

"The unqualified word 'Insured' includes the named insureds and also includes as additional insureds, the Executive Officers, Directors, Stockholders and Employees of the named insured while acting within the scope of their duties as such, provided that:

"(1) the policy does not cover any such Employee, other than an Executive Officer, as an additional insured unless the named insured so directs the Company in writing upon a claim being made against such Employee."

After its opening brief had been filed the plaintiff moved on two occasions to supplement the record by submitting interrogatories to Henry R. Holte, Jr., Vice-President, Secretary and General Attorney of Philco Corporation, in order to show that Carolan was not an "executive officer" of Philco, in furtherance of a letter dated April 10, 1962 from the Assistant Manager, Insurance Department, of Philco to Globe, in which it was stated that "we do not desire the Globe's entering a defense on the part of our former employee, Mr. Lawrence L. Carolan." The court denied these motions in a rather fuzzy manner but the denial was proper as any such effort to bring the case within Canadian Indemnity Co. v. United States F. & G. Co., 213 F.2d 658, 9 Cir., (1954) comes too late. In this case the court held that when one policy insured the employer only and the other policy insured the employee, the second policy applied as the employee was liable to his principal for his negligence. In the instant case, Philco had ample opportunity to join Carolan as a third party defendant in the original action but it did not do so. As the court understands the language, supra, Philco reserved the right to direct Globe to appear when one of its employees became subject to a claim. Nothing is said as to when both Philco and the employee were joined as defendants. There is nothing in the stipulation or in the prior position of Globe to indicate that Carolan was not an insured. Philco did not direct Globe to recoup from Carolan but simply excused Globe from defending him in the full expectation that if Philco settled that would end the matter. We are dealing here with two insurance companies which settled a case fraught with the possibility of great damage awards. By the settlement Carolan was precluded from defending himself and his employer made no effort to hold him liable in the original action. The court concludes that the agreements of the companies and the pretrial order precludes the injection of the question that Carolan was not covered by Globe's policy.

Under "Conditions" in the Globe policy, Section (11) provides:

"Other Insurance. If any of the insureds hereunder has other valid and collectible insurance against a loss covered by this policy, the insurance

afforded by this policy shall be excess insurance over such other insurance."

## THE LAW

There are neither precedents nor statutes in Guam to cover the situation presented by this case. In Oregon Auto. Ins. Co. v. United States Fidelity & Guar. Co., 195 F.2d 958, 9 Cir. (1952) Suter had a policy which insured his automobile or any other automobile he was driving. He negligently caused an accident while driving a car owned by the Redmond Motor Company. Redmond had a policy which covered automobiles being driven with its consent. Both policies make coverage inapplicable if the driver had other insurance. The trial court attempted to fix primary and secondary responsibility but the appeals court held that both policies were repugnant to each other and that payment pro rata should be made. The court said:

"The trial court concluded that Oregon had the primary liability and that U.S.F. & G. was not liable on its policy until the limits of the Oregon policy were reached. Oregon says that the judgment should have been the other way around. It contends that the U.S.F. & G. policy was primary insurance in this situation and that Oregon is not liable except as to amounts above the limits of the U.S.F. & G. policy.

"It is plain that if the provisions of both policies were given full effect, neither insurer would be liable. The parties admit that such a result would produce an unintended absurdity, and each argues that the court must settle upon some way of determining which policy is primary and which secondary. Unfortunately there is no statute and there appear to be no decisions bearing on the subject in the jurisdiction in which the controversy arose, namely, Oregon.

"We have examined cases in other jurisdictions cited by counsel where closely similar or substantially identical disputes between insurance companies have arisen. These decisions point in all directions. One group indicates that the policy using the word 'excess' is secondary and that containing the language of the Oregon policy is primary. Examples of these decisions are cited on the margin. Their reasoning appears to us completely circular, depending, as it were, on which policy one happens to read first. Other cases seem to recognize the truth of the matter, namely, that the problem is little different from that involved in deciding which came first, the hen or the egg. See remark of Judge Major in Zurich General Accident & Liability Insurance Co. v. Clamor, 7 Cir., 124 F.2d 717, 719. In this dilemma courts have seized upon some relatively arbitrary circumstance to decide which insurer must assume primary responsibility. Thus one group of cases fixes primary liability on the policy which is prior in date. Another group undertakes to decide which policy is the more specific, holding the one thought more specific to be primary. Another solution is represented by Maryland Casualty Co. v. Bankers Indemnity Ins. Co., 51 Ohio App. 323, 200 N.E. 849, where it was held that the policy issued to the person primarily liable for the damage is the primary insurance. In sum, the cases are irreconcilable in respect both of approach and result."

This case came up from Oregon and the court had to anticipate what the Supreme Court of Oregon might hold. Both the plaintiff's and the defendant's contentions are so well stated in Travelers Insurance Co. v. Peerless Insurance Co., 287 F.2d 742, 9 Cir. (1961) that the opinion is quoted at length:

"This sort of contest between the issuers of two such policies, one providing that its coverage is 'excess' and the other providing that its insurance pays 'pro rata', has arisen in a substantial number of cases in ju-

risdictions elsewhere. Many of these cases are cited in Citizens Mutual Auto. Ins. Co. v. Liberty Mutual Ins. Co., 6 Cir., 273 F.2d 189. There the court said (at page 193): 'The foregoing authorities represent the overwhelming majority view that when an excess clause in one automobile liability insurance policy conflicts with another "other insurance" clause, and more particularly a "pro-rata" clause, in a second policy, the excess clause controls and is to be given its full effect.'

"The reasoning upon which such a conclusion is reached, as noted in that case, is substantially as follows: When one policy contains an adequate 'excess' insurance clause it cannot be considered to be other 'valid and collectible insurance against such loss'. Hence there is nothing on which the pro rata clause of the other policy may operate. In Citizens Mutual, supra, the Liberty Mutual policy contained an applicable excess clause which the court says was 'the only liability to which appellee was subject.' The Citizens Mutual policy was the one which contained the pro rata clause. Since the Liberty Mutual policy was excess the court noted that 'The Currie Co. did not have "other insurance against the loss" covered by the Citizens Mutual policy, as the only other insurance it had did not become effective until the exhaustion of the Citizens Mutual policy limits. For that reason the pro-rata clause of the Citizens Mutual policy did not apply and it was liable to the full extent of its policy limits.'

"If similar reasoning were followed here, we would say that Travelers pro rata provision did not come into effect because Travelers had a policy limit of $100,000 which exceeded the amount of the loss in this particular case, and since Peerless' insurance would not be 'valid and collectible insurance' until that policy limit were exhausted, there was no 'other insurance' as to which the pro rata provision could be applied.

"Another respectable authority which adopts a similar line of reasoning and reaches a similar conclusion is American Automobile Ins. Co. v. Republic Indem. Co., 52 Cal.2d 507, 341 P.2d 675. We think that it cannot be said that those decisions are without logical basis.

"Plainly the trial court adopted that view of this case in holding that Travelers was liable for the entire loss. However, a few weeks after the trial court had filed its opinion in this case, the Supreme Court of Oregon handed down its decision in Lamb-Weston, Inc. v. Oregon Automobile Insurance Co., 219 Or. 110, 341 P.2d 110 [346 P.2d 643, 76 A. L.R.2d 485]. That also was a case in which two automobile insurance companies, one referred to by the court as the St. Paul and the other referred to as the Oregon Company were contesting as in this case their respective responsibilities for the liability incurred in an automobile accident.

"Lamb-Weston had been using a truck leased from one Shafer. St. Paul had issued its policy to Lamb-Weston as the named insured. The Oregon Company had issued its policy against liability for property damage to Shafer. This policy contained an omnibus clause which operated to extend coverage to any person using the truck with Shafer's permission. The St. Paul policy contained the following provision: 'If the insured's liability under this policy is covered by any other valid and collectible insurance, then this policy shall act as excess insurance over and above such other insurance.' In that respect, the St. Paul policy resembled the Peerless policy here. The Oregon policy contained a provision similar to the pro rata clause of Travelers.

"The Oregon court held that the 'other insurance' clauses in these two

policies were repugnant to each other; that they must both be ignored, and that the loss must be prorated. In arriving at that conclusion the court reviewed many cases from other states which adopted various approaches to the solution of this sort of question and then turned to the decision of this court in Oregon Auto. Ins. Co. v. United States Fidelity & Guaranty Co., 195 F.2d 958, from which it quoted at considerable length and with approval. That was a case where each policy provided that under the circumstances there present, it should be excess only. It was held the policies were in this respect 'mutually repugnant' and hence these 'excess' provisions must be disregarded.

The Oregon court, adopting a similar approach to the facts of its case, which it thought involved a direct conflict between the clauses of the respective policies, said:

" 'It is, therefore, at once apparent from a consideration of the above policy provisions that each company by its "other insurance" clause seeks to limit its liability if other insurance is available to pay a part or all of an insured's loss. This is demonstrated by the fact that St. Paul provides that its policy can only be treated as "excess insurance over and above" other "valid and collectible insurance," and the Oregon policy can be treated only as paying a proportionate share if there is other "valid and collectible insurance" against such loss.

" 'It is also clear that as between the companies themselves no determination of whether or not there is other valid and collectible insurance can be established without first deciding which company is primarily and which secondarily liable, for St. Paul says it will pay only the excess after the limits of the Oregon policy are exhausted, and Oregon says, since there is other insurance,

it will pay only a proportionate share of the loss.

" 'Thus, in such a situation, the court is faced with determining which company shall be considered primarily liable, or treating the "other insurance" clause in each insurer's policy as so repugnant that they must both be ignored, and apply the rule that the loss shall be equally prorated between them.' Upon rehearing the court held that the loss instead of being equally divided should be prorated on the basis of the coverage furnished by the two policies. Lamb-Weston, Inc. v. Oregon Automobile Ins. Co., 346 P.2d 643 [76 A.L.R.2d 485]. See, also, General Accident, Fire & Life Assur. Corp. v. Continental Casualty Co., 9 Cir., 287 F.2d 464."

Ordinarily, in the absence of definitive opinions from the Ninth Circuit Court of Appeals, the Guam courts rely heavily upon California decision, the reason being that Guam adopted the California codes in 1933 and subsequent Guam legislation has oftentimes been patterned on California laws. In American Automobile Ins. Co. v. Republic Indemnity Co., 52 Cal.2d 507, 341 P.2d 675 (1959) the court held that where "other insurance" clauses of the type discussed appear in the policies of the driver and the owner, the cases have generally held that the insurer of the owner must bear the loss as against excess provisions in the policy of the driver. In terms of the California case just cited the owner of the accident car was Federal and Carolan was the driver.

This extended opinion has pointed up the confusion which exists when an attempt is made to reconcile the conflicting provisions involved in these policies.

The reality is that Philco was doubly insured and that it paid double premiums for such insurance, one premium to Globe directly for coverage including leased cars, the second indirectly to Capital through its rental payments to Federal. For these payments it received coverage in the amount of $1,100,000. In the ab-

sence of Globe, Capital's liability would have been $89,500 (one injured person having received $10,000 over the $50,000 limit for one injury). In the absence of Capital, Globe's liability would have been $99,500. This court holds that pro rata is indicated and that Globe is entitled to judgment against Capital for ¹⁄₁₁th of $99,500, or $9,045, with costs.

### CONCLUSION

It is concluded:

1. The court has jurisdiction of the parties and the subject matter.

2. The plaintiff is entitled to judgment against the defendant in the amount of $9,045 with costs.

3. The form of judgment shall be prepared by plaintiff and settled with defendant within 20 days.