Argued October 5, 1967, affirmed April 10, 1968

SPARLING, *Respondent, v.* ALLSTATE
INSURANCE COMPANY, *Appellant.*

439 P. 2d 616

*James H. Clarke,* Portland, argued the cause for appellant. With him on the briefs were Wayne Hilliard, McColloch, Dezendorf & Spears, Portland.

*Francis E. Marsh,* McMinnville, argued the cause for respondent. With him on the brief were Marsh, Marsh, Dashney & Cushing, McMinnville.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

HOLMAN, J.

This is a declaratory judgment proceeding seeking a construction of the uninsured motorist coverage of a policy of automobile liability insurance.

Plaintiff's decedent met his death by the negligence of an uninsured motorist while he was the occupant of a vehicle owned by the State of Oregon. At the time of his death the state was the named insured of a policy of liability insurance issued by Continental Casualty Company. The policy contained an uninsured motorist provision with limits of $5,000 for each person within a state vehicle who was killed or injured by the negligence of an uninsured motorist. The policy contained the following "other insurance" provision:

> "* * * if the insured has other similar insurance available to him and applicable to the accident, * * * the company shall not be liable for a greater proportion of any loss to which this Coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance."

Continental Casualty paid plaintiff its policy limits under the uninsured motorist provision.

At the same time decedent was the named insured of a policy of liability insurance issued by defendant which policy contained a provision insuring decedent against death or injury by the negligence of an uninsured motorist with limits of $5,000. This section of the policy contained the following "other insurance" provision:

"Exclusions—what this Section does not cover This Section of the Policy does not apply:
1. to bodily injury of an insured sustained while in ＊ ＊ ＊ any automobile, other than an owned automobile, if the owner has insurance similar to that afforded by this Section and such insurance is available to the insured;"

The trial court construed the uninsured motorist provision of defendant's policy to have covered plaintiff's decedent at the time of his death and entered judgment for plaintiff in the sum of $5,000 plus attorney's fees. From this judgment defendant appeals.

■ The provision of defendant's policy quoted above is known as an escape clause and defendant contends the trial court was in error in not giving effect to it and absolving defendant of all responsibility under its policy for damage caused by the death of plaintiff's decedent. The first issue presented is whether what is known in this state as the *"Lamb-Weston"*[1] doctrine should be applied to the present state of facts. In six cases[2] this court has applied it and has

[1] Lamb-Weston, et al v. Ore. Auto. Ins. Co., 219 Or 110, 341 P2d 110, 346 P2d 643, 76 ALR2d 485 (1959).

[2] Liberty Mut. Ins. v. Truck Ins., 245 Or 30, 420 P2d 66 (1966); Firemen's Ins. v. St. Paul Fire Ins., 243 Or 10, 411 P2d 271 (1966);

held that where there is coverage by two insurers of the same loss and both attempt to limit the extent of their coverage when there is other insurance, one by a pro rata clause and the other by an excess clause, the clauses are repugnant and incapable of logical application. In that situation, therefore, the respective clauses have been disregarded and held of no effect. Defendant contends that the doctrine has no application here because, while there may be repugnancy between a pro rata clause and an excess clause, there is no repugnancy between an escape clause and a pro rata clause which is the present situation.

■ In effect, defendant's policy provides that if there is other insurnace, there is no coverage, while Continental's policy provides that where there is other insurance it will pay only part of the loss. Each policy gives complete coverage except for the other's policy. Each says it is responsible for less than the loss where there is other insurance. In order to give effect to the respective provisions it is necessary to determine which insurer bears the primary obligation. There is no basis for such a determination other than an arbitrary designation. There is no rational basis for distinguishing the present situation of an escape clause versus a pro rata clause from that in *Lamb-Weston* where there was an excess clause versus a pro rata clause. The disposition of this case was anticipated by the dictum in *Lamb-Weston* at page 110:

"The 'other insurance' clauses of all policies are

Smith v. Pacific Auto. Ins. Co., 240 Or 167, 400 P2d 512 (1965); Gen. Ins. Co. v. Sask. Gov. Ins. Office, 238 Or 8, 391 P2d 616 (1964); Cimarron Ins. Co. v. Travelers Ins. Co., 224 Or 57, 355 P2d 742 (1960); Lamb-Weston et al v. Ore. Auto. Ins. Co., 219 Or 110, 341 P2d 110, 346 P2d 643, 76 ALR2d 485 (1959).

but methods used by insurers to limit their liability, whether using language that relieves them from all liability (usually referred to as an 'escape clause') or that used by St. Paul (usually referred to as an 'excess clause') or that used by Oregon (usually referred to as a 'prorata clause'). In our opinion, whether one policy uses one clause or another, when any come in conflict with the 'other insurance' clause of another insurer, regardless of the nature of the clause, they are in fact repugnant and each should be rejected in toto. * * *"

Where one of the provisions is an escape clause, as in the present case, one runs into exactly the same circularity of reasoning in attempting to determine which policy should be given preference as one would if it were a pro rata or an excess provision. Regardless of the type of provision each policy attempts to limit its coverage where there is other insurance. Each policy affords complete coverage in the absence of the other company's policy. It is impossible, therefore, to say there is no other insurance regardless of which policy is being considered. *Lamb-Weston* is still a minority holding but the following cases have adopted the rule.[9] The literature on the effect of "other insurance" clauses has become extensive.[10]

---

[9] Travelers Insurance Co. v. Peerless Insurance Co., 287 F2d 742 (9th Cir 1961); Oregon Auto. Ins. Co. v. United States Fidelity & Guar. Co., 195 F2d 958 (9th Cir 1952); Globe Indemnity Co. v. Capital Insurance & Surety Co., 228 F Supp 494 (D C Guam 1964), vacated on other grounds, 352 F2d 236 (1965); New Amsterdam Cas. Co. v. Lloyd's Underwriters, 56 Ill App 2d 224, 205 NE2d 735 (1965); Graves v. Traders & General Insurance Company, La App, 200 So 2d 67 (1 Cir 1967); Woodrich Construction Co. v. Indemnity Insurance Co., 252 Minn 86, 89 NW2d 412 (1958).

[10] Billings, The "Other Insurance" Provision of the Automobile Policy, 318 Ins L J 498 (July 1949); Rollins, Conflicting Automobile Coverage, 64 N J L J 329 (1941); Russ, The Double Insur-

Means of determining primary responsibility such as whether an owned automobile was involved is purely arbitrary. It has been urged that, by the use of substantially identical language in attempting to limit or escape their liability when the injury occurred in other than an owned automobile, the two insurance companies intended that the insurer of the owner of the vehicle have primary responsibility. In the first place, this is contrary to their expressed intent. In the present factual situation the intent, as demonstrated by the policies, was to escape liability in one instance and limit it in the other if there was other insurance. Secondly, it is extremely difficult to understand how it can be said that the two companies, who have no contractual relationship, are governed in their priority of responsibility for a given accident by some sort of a presumed mutual intent or understanding which arose from language used by each in their contracts with third parties. It must always be remembered that, in the factual situation that occurred, the owned-automobile provision of one policy is applicable while the non-owned provision of the other applies. If the terms of the *applicable* provisions are repugnant it is of little consequence that the policies are identical and their provisions parallel.

Defendant contends that the application of the *Lamb-Weston* doctrine should be limited to contro-

ance Problem—A Proposal, 13 Hast L Rev 183 (1961); Watson, the "Other Insurance" Dilemma, 518 Ins L J 151 (March 1966); Concurrent Coverage in Automobile Liability Insurance, 65 Col L Rev 319 (1965); Conflicting Interpretations of "Other Insurance" Clauses, 28 Ind L J 429 (1953); Automobile Liability Insurance—Effect of Double Coverage and "Other Insurance Clauses," 38 Minn L Rev 839 (1954); Comments, 52 Col L Rev 1063 (1952); 55 Harv L Rev 1218 (1942); 46 N Car L Rev 433 (1968); 5 Stan L Rev 147 (1952); 13 Vand L Rev 409 (1959).

versies between insurers concerning allocation of losses and should have no application to an action by an insured on his policy against his insurer. Allocation between insurers is based on what the respective insurers owe the insured under their policies. What one of the insurers owes the insured is the issue in the present litigation. Because the policy issued to plaintiff's deceased is conditioned on other insurance, the obligation to plaintiff cannot be determined until the effect of the respective "other insurance" clauses is established. The situation in this case is identical with that in *Smith v. Pacific Auto. Ins. Co., supra,* note 2, except that in *Smith* the other insurance provision of the plaintiff's policy was treated as an excess clause rather than an escape clause, and the policy had a provision that the total recovery from all insurance, regardless of its source, was limited to $5,000.

■ Defendant also contends that even if the clauses are repugnant, the court erred in holding that plaintiff was entitled to recover $5,000 from defendant because plaintiff did not seek judgment for any sum and there was neither stipulation nor proof of damages and therefore the record submits only the question of liability. Plaintiff's complaint contained the following allegation and prayer:

"X

"Plaintiff and Defendant disagree as to the construction, interpretation and legal effect of the 'other insurance' provisions of the policies hereinabove mentioned. Plaintiff is entitled to be paid by the defendant the sum of $5,000.00 for the benefit of the widow and dependent child of George G. Sparling. Defendant has denied plaintiff's claim and has refused to pay that sum or any portion thereof.

"XI

"Defendant's refusal and failure to make payment has been vexatious and without reasonable cause.  *   *   *"

*   *   *   *   *

"WHEREFORE, plaintiff prays that the court make and enter a declaratory judgment construing and interpreting the 'other insurance' provisions of the contract of insurance between plaintiff's decedent and the defendant and declaring and decreeing that plaintiff is entitled to be paid under the contract the sum of $5,000.00 for the benefit of the widow of George G. Sparling and his dependent child, and entering judgment in favor of the plaintiff and against the defendant for plaintiff's attorney's fees in the sum of $2,125.00 together with plaintiff's costs and disbursements incurred herein."

Defendant's answer denied the allegations set forth and prayed that plaintiff take nothing by her complaint. The trial court's order contained the following recitation:

"The above entitled action came on for trial on the 26th day of August, 1966, before the Honorable Val D. Sloper, Circuit Judge, and the plaintiff appeared by Francis E. Marsh, his attorney, and the defendant appeared by Wayne Hilliard, its attorney, and it was agreed between the parties that the action should be tried before the judge without a jury; and

"It appearing to the court that the parties had stipulated that the only issue involved was one of law for the court to determine whether or not the defendant is liable under its policy in view of the provision contained therein,  *   *   *."

A written stipulation of facts contained no agreement concerning damages.

The complaint and answer were sufficient to sustain a judgment. The distinction between requesting a judgment declaring plaintiff was entitled to be paid $5,000 and requesting a judgment for $5,000 is too fine for this court to appreciate.

■ The fact that the written stipulation contained no agreement relative to damages does not negate the possibility that the parties otherwise represented to the court that the only issue involved was the one of law presented by the stipulation. The judgment order recites that the parties agreed that this was the only issue. We have no transcript of any of the proceedings before the court. In the absence of a transcript showing the contrary, the recitals in the judgment concerning the events occurring in open court import absolute verity.

The judgment of the trial court is affirmed.

McALLISTER, J., dissenting.

The *Lamb-Weston* doctrine was devised to require two insurance companies, both covering the same risk, whose policies contained conflicting "other insurance" provisions to prorate the loss. In this case the *Lamb-Weston* rule is extended to the extreme of permitting an insured to recover the full policy limit of liability ($5,000) from each of the two companies involved. This double recovery is permitted even though the "other insurance" clauses are the easiest of any to reconcile, if, indeed, any reconciliation is necessary. Almost without exception the authorities agree that there is no real conflict in the typical case where a driver covered by his own policy is driving a non-owned automobile and is also covered by the policy of the owner.

George C. Sparling was killed in an automobile

collision in January, 1965, while driving an automobile owned by the State of Oregon. The accident was caused by the negligence of an uninsured motorist.

Sparling was the named insured under a policy of insurance issued by the defendant, Allstate Insurance Company. That policy provided that it did not apply to an injury sustained by Sparling while in an automobile not owned by Sparling, if the owner had insurance similar to that afforded by Sparling's policy, and such insurance was available to Sparling.[①]

It is stipulated that the owner of the automobile driven by Sparling did have other insurance similar to that afforded by Sparling's policy, and that such insurance was available to Sparling. The automobile driven by Sparling was owned by the State of Oregon. The state was the named insured under an insurance policy issued by Continental Casualty Company which contained uninsured motorist coverage similar to the coverage of Sparling's policy. The limits of liability under both policies were the same, $5,000 for each person, and $10,000 for each accident.

The majority opinion quotes only a part of the "other insurance" clause of the Continental policy issued to the State of Oregon. The entire clause reads as follows:

> · "Other insurance. With respect to bodily injury to an insured while occupying an automobile not

[①] " '* * * * *
" 'Exclusions—what this Section does not cover
" 'This Section of the Policy does not apply:
" '1. to bodily injury of an insured sustained while in or upon, entering into or alighting from, any automobile, other than an owned automobile, if the owner has insurance similar to that afforded by this Section and such insurance is available to the insured;' "
(IX Stipulation as to the Facts)

owned by the principal named insured, the insurance under this endorsement shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.

"Except as provided in the foregoing paragraph, if the insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable for a greater proportion of any loss to which this Coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance."

The provisions of the first paragraph are important in this case. They provide that as to automobiles not owned by its insured, Continental's policy will apply only as excess insurance. Continental recognized that in the converse situation where the vehicle involved was owned by its principal named insured, it provided the primary coverage. Continental, therefore, in accordance with standard insurance practice, paid to plaintiff as executrix of the estate of George Sparling the limit of its coverage in the sum of $5,000. Mrs. Sparling then brought this action to require the defendant Allstate to pay another $5,000, being the limit of Allstate's policy.

To summarize the factual situation, we find that Sparling had a contract with Allstate which provided clearly that the policy should not apply if (a) Sparling was injured while driving an automobile not owned by him, if (b) the owner had insurance similar to Spar-

ling's insurance, and (c) such insurance was available to Sparling. The three stipulated conditions, injury in a non-owned automobile, similar insurance carried by the owner, and the availability of such insurance to Sparling, are all present. Can we refuse to enforce contract provisions so explicit, so precise, and admittedly applicable to the facts of this case?

Conceding that *Lamb-Weston* should apply when the "other insurance" clauses of two policies are irreconcilable, this is not such a case. Here the companies themselves have answered the riddle of which should first enter "the door of responsibility."[②] Each company has provided that as to non-owned automobiles it should have no liability or that its coverage should be excess. Each company has contracted that "non-ownership" shall be the touchstone by which primary and secondary liability shall be determined. Allstate contracted in precise terms with Sparling that its liability should turn on ownership or non-ownership. Continental recognized that it insured the owner automobile and paid the limits of its liability without protest. Why should Sparling's estate get a double recovery windfall because this court stubbornly applies *Lamb-Weston* when the reason for the rule is not present.

Facts similar to those in the case at bar were considered by the Supreme Court of California in *American Automobile Ins. Co. v. Republic Indemn. Co.,* 52 Cal2d 507, 341 P2d 675 (1959). In adopting the rule which I think should apply here, the court, at 52 Cal2d 511-12, 513, 341 P2d 677, 678-79, said:

"The language of the 'other insurance' clauses contained in both policies is substantially the same.

[②] Firemen's Ins. v. St. Paul Fire Ins., 243 Or 10, 15, 411 P2d 271, 274 (1966).

The clauses consist of two parts; the first provides generally for prorating where there is other insurance covering the loss, and the second provides, as a specific exception, that when the named insured is driving a car not owned by him the insurance will be excess over all other insurance.
\* \* \*

"Where 'other insurance' clauses of this type appear in the automobile liability policies of both the driver and the owner, the cases have generally given effect to the excess provision in the policy of the driver and have held that the insurer of the owner is primarily liable and must bear the whole loss, within the limits of its policy. [cases cited]
"\* \* \* \* \*

"\* \* \* The only construction of the 'other insurance' clause under which both its parts will be meaningful is that the *excess* provision alone controls in every situation which falls within its terms, such as when a person is driving the car of another and both the driver and the owner have insurance, and that the *prorate* provision alone governs in all other situations, for example, when more than one policy has been issued to the same person. When the driver's insurance is excess, it necessarily follows that the insurance of the owner is primary, and therefore the owner's insurer must bear the entire loss to the extent of the limits of the policy."

Commentators have pointed out that the *Lamb-Weston* rationale is unnecessary in the simple case of a non-owned automobile used by a driver who is covered both by his own policy and by the owner's policy. If the policies contain similar non-owner clauses there is really no conflict. I quote the following from Watson, *The "Other Insurance" Dilemma,* 518 Ins L J 151, 157 (March 1966):

"In this situation it seems obvious that each company has made exactly the same distinctions,

with exactly the same intent, in each policy, that is, as to other insurance generally it will prorate, but as to that one situation where its assured is driving a nonowned vehicle it will be excess only. Neither policy intended to prorate where its assured was driving a nonowned vehicle and both policies spelled out this intent clearly. How, then, can Company B now be heard to say that it cannot see any distinction in the language?"

I also quote a similar statement found in Russ, *The Double Insurance Problem—A Proposal,* 13 Hast L Rev 183, 190 (1961):

"Some courts, however, have shown a reluctance to follow the *Oregon Auto* approach in all cases, preferring instead, to continue fixing responsibility on one insurer or the other. This hesitancy is greatest in cases where the loss results from operation of a borrowed vehicle and the owner's automobile policy has a pro rata clause while the operator's automobile policy has an excess clause applicable to non-owned vehicles. These courts either reject the idea that a conflict exists in the particular situation, or rely on a presumed intent of the insurers."

Our objective in all cases should be to give full effect to the intent of the parties as expressed in the contracts. It is only when this cannot be done that we should declare the contracts mutually repugnant. In *Liberty Mutual Ins. Co. v. Truck Insurance Exch.,* 245 Or 30, 420 P2d 66, 70 (1966), we said that *Lamb-Weston* should not be applied if there is "language in either policy which would show which clause should be entitled to preference."

In this case the intent of the companies can be determined from the use by each in its own policy of two different limits of liability, one general and one spe-

cific. Certainly the company insuring the owned automobile cannot complain if the specific provision of the other policy is given the same meaning as it obviously intended the specific provision of its own policy to have.

The majority opinion claims that several cited cases have adopted the *Lamb-Weston* rule. One of the cases, *Oregon Auto Ins. Co. v. United States Fidelity & Guar. Co.,* 195 F2d 958 (9th Cir 1952), was decided seven years before *Lamb-Weston.* It was the "chicken" which laid the *Lamb-Weston* "egg." In the second case, *Travelers Insurance Co. v. Peerless Insurance Co.,* 287 F2d 742 (9th Cir 1961), the court indicated clearly that it applied the minority *Lamb-Weston* rule only because it was required to do so by our decision in *Lamb-Weston.* The District Court of Guam, *Globe Indemnity Co. v. Capital Insurance and Surety Co.,* 228 FS 494 (DC Guam 1964), also preferred the majority rule, but felt bound by the Ninth Circuit decision in *Travelers Insurance Co. v. Peerless Insurance Co.,* supra. The adoption of the *Lamb-Weston* rule by the Appellate Court of Illinois in *New Amsterdam Cas. Co. v. Lloyds' Underwriters,* 56 Ill App2d 224, 205 NE2d 735 (1965), was not in a "non-owned" automobile case. In any event, the District Court has been reversed *sub silentio* by the Supreme Court of Illinois in *New Amsterdam Cas. Co. v. Certain Underwriters,* 34 Ill2d 424, 216 NE2d 665 (1966), which expressly rejected the *Lamb-Weston* rule.

The overwhelming weight of authority is opposed to the rule which the majority applies in this case. *Continental Cas. Co. v. Zurich Ins. Co.,* 57 Cal2d 27, 17 Cal R 12, 366 P2d 455 (1961); *American Automo-*

*bile Ins. Co. v. Republic Indemn. Co.*, 52 Cal2d 507, 341 P2d 675 (1959); *New Amsterdam Cas. Co. v. Certain Underwriters,* supra, at 216 NE2d 667-68; *Consolidated Mut. Ins. Co. v. Bankers Ins. Co. of Pa.*, 244 Md 392, 223 A2d 594 (1966); *Zurich v. Continental Casualty*, 239 Md 421, 212 A2d 96 (1965); *Fidelity & Casualty Co. of N. Y. v. Western Cas. & S. Co.* (Mo App) 337 SW2d 566 (1960); *Mtn. Sts. Casualty v. Amer. Cas.*, 135 Mont 475, 342 P2d 748 (1959); *Turpin v. Standard Reliance Ins. Co.*, 169 Neb 233, 99 NW2d 26 (1959); *Western Pacific Insurance Co. v. Farmers Ins. Exch.*, 69 Wash2d 11, 416 P2d 468 (1966); *Safeco Ins. Co. of Amer. v. Pacific Indemnity Co.*, 66 Wash2d 38, 401 P2d 205 (1965); *Lubow v. Morrissey*, 13 Wis2d 114, 108 NW2d 156 (1961); *Henderson v. Selective Insurance Company*, 369 F2d 143 (6th Cir 1966); *Citizens Mutual Auto Ins. Co. v. Liberty Mutual Ins. Co.*, 273 F2d 189 (6th Cir 1959); *American Surety Company of N. Y. v. Canal Ins. Co.*, 258 F2d 934 (4th Cir 1958), 157 FS 386. The rule applied in the above cases is summarized in Annot. 76 ALR2d 502 at 505 (1961), as follows:

> "* * * Thus, if the non-ownership coverage offered by one of the policies involved is of the 'excess insurance' type, the conclusion is generally reached—no matter how various the reasoning adopted in support of it in the different cases may be—that the *policy issued to the owner* of the vehicle is the 'primary' policy, and the company issuing it is liable up to the limits of the policy without apportionment, although the policy contains a 'pro-rata' clause. To state the proposition in another way: if one policy has been issued to the owner of the vehicle causing damage, and another covers the same loss by virtue of the relationship to the accident of one who is not the vehicle owner, the latter's insurer, at least where its coverage is of

the 'excess insurance' variety, is in the favorable position and need not assume any of the loss, although the vehicle owner's policy contains a 'pro-rata' clause.   *  *  *"

See also, 7 Am Jur 2d, Automobile Insurance, § 202, page 544;. 8 Appleman, Insurance Law and Practice (1962 ed) § 4914, page 400.

The rule followed by all courts but Oregon has the virtue of enforcing the contracts made by the parties. I believe it should be applied in the case at bar and similar non-owned automobile cases.

I dissent.

Goodwin, J., concurs in this dissent.